# GEO. B. WARREN

## vs.

# THE FIRST DIVISION OF THE ST. PAUL & PACIFIC RAILROAD CO.

An order was made, under appellant's charter, (*Laws of* 1857, *extra session, ch.* 1, *sec.* 13) by one of the justices of this court appointing commissioners to appraise, pursuant to said section, the value of land on a specified portion of appellant's line, which said company had entered upon, possessed, occupied or used, or should thereafter enter upon, possess, take, occupy or use for its purposes. The respondent appealed to the district court for Ramsey county from the commissioners' appraisal and award, filed in the clerk's office of said court, of the value of certain land belonging to him. Said appeal coming on for trial the district court, upon motion of the respondent, dismissed the case for want of jurisdiction, because there was nothing upon its record to show that the commissioners were ever duly appointed, or what they were appointed for. *Held*, that the order dismissing the case was appealable as a final order affecting a substantial right made in a special proceeding. That the district court had jurisdiction in the premises, although neither the order appointing the commissioners, nor a certified copy thereof, was on file in said court.

An appeal from the award of the commissioners to the district court, under said charter, brings before the court only the question of the propriety of the amount awarded by the commissioners.

The reservation in the notice of appeal, of objections to the validity of the proceedings under which the award was made, was ineffctual to give the district court power to entertain such objections. But it is not, therefore, necessary that the land owner should either abandon such objections, or his right to a jury, upon the question of the damages resulting to him from the taking of his land. *Miller et al. vs. Troost*, 14 *Minn.* 365, referred to as illustrating one mode of taking advantage of such objections without losing such right.

Warren v. The First Division of the St. Paul & Pacific Railroad Co.

It seems, also, that such objections might be taken advantage of upon an appeal from the judgment entered upon the verdict of the jury.

Objections to the validity of this order appointing these commissioners might also be taken advantage of by motion in this court to vacate the order, notwithstanding the pendency of the appeal from the award.

In the present case, therefore, to prevent future litigation, certain objections of that character, though not before the court upon this appeal, are passed upon as follows, viz.: *Held*, that the territorial legislature had power to authorize the condemnation of land for railroad purposes.

That the provision in this charter for the appointment of commissioners by the supreme court or a judge thereof, is not repugnant to the constitution. *Art. 6, sec. 1.*

That it was discretionary with the legislature to decide whether or not it would itself exercise the right to determine what lands were necessary to be taken for the purposes of the road.

Although the order appointing commissioners might be nugatory as to so much thereof as purports to authoriz> them to appraise the value of land which the company had theretofore entered upon, possessed, occupied or used, at the time it was so entered upon and taken, such would not necessarily be the case as to so much of the order as authorized them to make a like appraisal of land thereafter to be taken.

Appeal by defendant from an order of the district court for Ramsey county. The case is fully stated in the opinion.

H. R. BIGELOW, for Appellant.

I. V. D. HEARD, for Respondent.

*By the Court.*—RIPLEY, CH. J.—In June, 1869, in vacation, an order was made by Mr. Justice McMillan appointing George W. Armstrong, Peter Berkey and Henry T. Welles commissioners to make an appraisement and award of the value of any and all lands which were the private property of any person on a specified portion of the appellant's line, and which the said company had theretofore entered upon, possessed, occupied or used, or should thereafter enter upon, possess,

take, occupy or use for its purposes pursuant to section thirteen of its charter.   [*Extra Session, Laws of* 1857, *page* 3.]

Said commissioners, thereafter, upon notice to the respondent as by said charter prescribed, proceeded to examine certain land owned by him in Ramsey county, and upon such examination made an appraisal and award thereof, and on the 22d of October, 1870, filed their report in the office of the clerk of the district court of the said county, as by said section required.

Within the time by said section limited therefor, the respondent pursuant thereto filed with said clerk a written notice of appeal from said award, specifying as the ground of the appeal that the sum awarded is much less than the actual value of the land at the time of the entry thereon of the company, and ever since; claiming, also, that the taking and appropriation thereof is unnecessary and unauthorized, that the award is uncertain and indefinite; that it does not include any damages or compensation for its use by the company prior to the said proceedings; " and he especially objects and excepts to the action of the said judge of the supreme court, and of the company, and of the said commissioners, in the premises, and all the proceedings and notices had on their behalf therein ;" also "reserving to himself all objections to the legality and regularity of the proceedings heretofore had herein, and to the right of said company to take any portion of said land." Said appeal being placed upon the calendar of said court as provided by said section, and coming on for trial, the respondent moved to quash and set aside the report upon the following grounds :

1st.   Because the law upon which the same is based is unconstitutional and void.

2d.   Because said report does not show that the land of the plaintiff therein referred to was ever designated in any appli

cation to any court or judge, or in any notice for such application, or in any order, or by any process, nor was the same ever so designated, or the plaintiff named in any such notice, order or application as a matter of fact.

3d.   Because it does not appear from said report that the plaintiff's lands have been entered upon, taken or used by said company

4th.   Because there is nothing to show how the commissioners ascertained what lands the company desired to have condemned.

5th.   Because in the records of this court, there is nothing to show that said commissioners were ever duly appointed, or what they were appointed for.

6th.   As to land specified in this objection, because it is more than two hundred feet from the located line of said railroad company, and for the reason specified in the affidavit upon which the motion was made, viz. : that said land was not necessary for a right of way, and that the line of the railroad has not been marked upon the ground, or in any manner marked or located upon or over the same.

The motion was granted upon the grounds that there was not in the district court any record of the appointment of said commissioners; that to give said court jurisdiction of their report, to take any action therein, the report should be supported by the record in said court of the appointment ; that in the absence of such record the court had no jurisdiction of the subject matter, and could make no order in the matter affecting the rights of the parties ; and the court held that the proper order was to dismiss the case.

It was therefore " ordered that the motion to dismiss the case be and hereby is granted, and the same is dismissed accordingly."

The company appealed to this court. The respondent

Warren v. The First Division of the St. Paul & Pacific Railroad Co.

makes the point that this was not an appealable order. This, however, is a special proceeding, (*McNamara vs. Minn. Cent. Railway Co.*, 12 *Minn.* 388,) and the order is clearly appealable under *sub. 6 of sec. 8, of ch. 86, of the General Statutes*, as a final order affecting a substantial right made in a special proceeding, since the dismissal of the case, not *the appeal,* dismissed such special proceeding, thereby annulling the report, and depriving the appellant of any right it might otherwise have had to obtain the land on payment of the sum awarded or assessed by the jury.

The action of the district court cannot be sustained upon the ground upon which its decision puts it. The fact of the appointment was not questioned. Of the fact, indeed, we take judicial notice, for the order appointing the commissioners by its terms was to be entered, and is entered upon the records of this court. (See the order, *Wilkin vs. First Div. &c.,* 16 *Minn.* 271.) The fact, not the evidence of the fact, was essential to the jurisdiction of the district court in the premises. That court conceives, as appears from its decision before us, that it would have had jurisdiction had a duly certified copy of the proceedings and order of appointment been filed with such report. The papers relating to such appointment were, pursuant to such order, and rightly, filed in the clerk's office of this court, and the order entered in this court.

This as we have said is a special proceeding. It is instituted by the application for the appointment of commissioners, and is pending somewhere from its commencement to its termination.

In respect of the application, the charter contemplates that it may be pending, either before the supreme court, or a judge thereof, or before the district court, or a judge thereof. The place of the record of the proceeding in respect of such ap-

plication, is in the court before whom, or a judge thereof, it did take place.

The position taken in the court below, then, is, that it would have had jurisdiction, if a certain kind of evidence of the commissioners' authority had been placed on its files; a kind of evidence, moreover, which though the order authorized it, did not require nor did any law require the appellant or the commissioners to file in the district court.

If the fact of the appointment had been disputed, the district court might have required proof thereof before proceeding with the case, but its power to proceed could not depend upon the presence of such proof on its files. Suppose the application for commissioners had been made to the judge of the district court in vacation, and he had delivered his order of appointment to the appellant, directing it, and the other papers relating to the matter, to be filed with the clerk of the district court, upon appeal from an award it would hardly be supposed that the district court had no jurisdiction because of the appellant's neglect to file them. Such a supposition could only proceed on the hypothesis that its jurisdiction depended upon the fact that such papers were on file; upon which theory it would be gone, if they should be at any time taken off the files.

The respondent, however, contends that the district court was justified in dismissing the proceedings on the following grounds, namely:

1st. The report was void because the commissioners were appointed by a judge of the supreme court, an exercise of original jurisdiction not warranted by the constitution.

2d. That it was void, as contravening *art.* 10, *sec.* 4 of the constitution, in this, that the state should itself determine in the first instance what lands are necessary to be taken, and

not delegate this power to the interested parties, the railroad companies themselves.

3d.   That the provisions of the charter authorizing the condemnatory proceeding are void, as they provide that the company may possess and use the land of private persons before making or securing payment therefor.

4th.   That the territorial legislature had no authority to authorize the condemnation of land for railroad purposes.

All these objections, it will be seen, go to the invalidity of the proceedings under which the award is made.   We are of opinion, however, and respondent seems to admit, that an appeal from the award provided for in section 13, brings before the district court, only the question of the propriety of the amount awarded by the commissioners.

His position, as we understand it, is that this was a judicial proceeding initiated by the appellant pending in the district court, in which by his appeal the respondent had demanded a jury trial, but that this did not prevent him from moving to dismiss the proceedings for want of jurisdiction, when and as he might have done in any other case.

But in a case arising under the act relating to dams and mills, *Pub. Stat. ch.* 129, which provides for condemnatory proceedings similar to those of this charter in this respect, (except that by the express terms of the act, appeals bring before the district court the propriety of the amount of damages reported by the commissioners;) upon such an appeal coming on to be tried, the defendants moved upon the petition and papers on file to dismiss the petition, and to vacate the order appointing the commissioners.   On appeal from the order of the district court denying the motion, this court held, that as the appeal from the commissioners' report brought before the district court, only the question as to the propriety of the amount awarded, the court was right in

denying the motion to set aside the order appointing commissioners. *Turner vs. Holleran et al.*, 11 *Minn.* 253.

The present case cannot be distinguished from that. (See also *Schermeely vs. Stillwater and St. P. R. R.*, 16 *Minn.* 506.

The respondent says this special proceeding was pending in the district court from the filing of the award. If so, the mill dam proceeding was also. If we suppose the district court to have appointed these commissioners, the analogy is perfect between that case and this one. If, therefore, the district court in the mill dam case could not on appeal from the award review the action of the judge of that court in appointing the commissioners, on what ground can it be said that the district court, on the respondent's appeal from the award in this case, may review the action of *this* court, or of a judge thereof, in appointing these commissioners. The district court would, therefore, have been equally in error in dismissing the case—on the other grounds above specified— as it was for the reason given in its decision.

It is urged that as the land owner must, " if he desires an assessment of damages by a jury, appeal within thirty days after the filing of the report, and as no suit at law or in equity could be determined within thirty days, he must either abandon his jury trial, or his right to object to the condemnatory proceedings." We do not perceive the necessity. One way in which objections to the validity of such proceedings initiated in the district court may be taken advantage of without losing the right to such jury trial, is illustrated by the case of *Miller et al. vs. Troost*, (14 *Minn* 365,) in which, among other questions, the constitutionality of the mill dam act was tested in an action brought to compel Troost to abate his dam, and restrain the commissioners from proceeding to assess the damages.

In this case, in which the respondent asks if the proceedings can be attacked in any other way than by a motion in the

proceedings themselves, it is perhaps a sufficient answer to say, that if not, it was open to him to attack them in *this court as they were attacked* by the respondent in some of the cases submitted with this, by a motion to vacate the appointment, on which motion, the second objection specified in respondent's motion in the district court aforesaid, was considered and overruled. *Wilkin vs. First Div. supra.*

Further than this, however, we agree with the respondent that this special proceeding commencing with the application to appoint commissioners, is as much a judicial proceeding as any other special proceeding, and that in the appointment of these commissioners the supreme or district court or judge thereof act in a judicial capacity. *In the matter of Cooper*, 22 *N. Y.* 67.

If the application for the appointment were made in the district court, the land owner might of course be heard in opposition thereto; nor, as at present advised, do we see why jurisdictional objections might not be taken advantage of by him on an appeal from the judgment of the district court, entered upon the verdict of the jury, which (writs of error being abolished) takes the place of the writ of error provided for in this charter. (*Sec.* 13.) Such an appeal would bring up the record of the entire proceedings from the commencement. Should it appear therefrom that they were void for want of power in the district court to entertain them, it is not perceived why this objection might not as well be taken here in this, as in any other special proceeding, whether brought here by appeal, or certiorari. Certainly there is nothing in *Turner vs. Holleran* which militates against such a view.

It is not necessary, however, to give any opinion upon this point, since from what has been said it appears that the respondent's rights are in no such danger as he supposes, although

the district court had no power to entertain his motion upon an appeal from the report.

It follows, also, from what has been said, that he gets no right to make the motion now under consideration, by any reservations in his notice of appeal, if the appeal brings nothing but the question of the propriety of the sum awarded before the district court.

Some objections the appeal would waive, so that they could not thereafter be taken advantage of. As to all such, a reservation of the right to make them in the notice of appeal, would be as ineffectual as a reservation in an answer of the right to object to a complaint that it contained an improper joinder of causes of action.

As to objections which might be taken thereafter, notwithstanding an appeal, the respondent's right to make them at a proper time and in a proper manner would remain unimpaired, reservation or no reservation; but no reservation could give him the right to raise them, as in this instance, at an improper time and in an improper manner. Some of these objections, however, would, as already remarked, have been properly made on a motion in this court to vacate the appointment.

In the case already alluded to (*Wilkin vs. First Div. St. P. and P. R. R.,* 16 *Minn.* 271) it is said that " We do not understand the constitutionality of this legislation to be questioned, or if it be, we are not directed to, nor do we discover, any provision of the constitution which it violates." We do not see why it is not still open to this respondent, notwithstanding the pendency of this appeal in the district court, to move *this* court to vacate the order appointing these commissioners upon the ground, for instance, that it was unconstitutional.

The fact that an appeal brings only the question of damages before the district court, has obviously nothing to do with what may or may not be brought before us on such a motion;

nor do we perceive any ground for an assertion that such an appeal waives the right to take advantage of such an objection here.

If we have no power under the constitution or laws to appoint commissioners in any case whatever, such an appeal would no more waive such an objection, than proceeding to trial before a justice of the peace in a suit for divorce would waive an objection to his jurisdiction.

We will, therefore, to prevent future litigation, (though they are not before us on this appeal) give our opinion upon the objections now specified as aforesaid, and which have been argued by counsel on both sides. The first, in order of time, is that the territorial legislature had no authority to authorize the condemnation of land for railroad purposes. This seems to overlook the provision in the organic act, " that the legislative power of the territory shall extend to all rightful subjects of legislation, consistent with the constitution of the United States and the provisions of this act."

The respondent would not contend that the territorial government had not the right of eminent domain, for the clause (*sec.* 12) upon which he relies contemplates its exercise, in its securing, by reference to the Wisconsin act, to inhabitants of the territory " full compensation whenever the public exigencies make it necessary for the common preservation to take any person's property, or demands his particular services." *Organic Act of Wis. sec.* 12 ; *Ordinance of* 1787, *art.* 2.

That it is a rightful subject of legislation in all governments cannot indeed be questioned ; and certainly there is nothing inconsistent with the above provision of the ordinance of 1787, in the exercise of the eminent domain in other proper cases than those therein enumerated. And as the mode of exercising the eminent domain, whether by the territory or its delegates, rested in the discretion of the legislature subject

to the constitution of the United States and said organic act, ( *Wilkin vs. First Div. St. P. and P. R. R., supra,* ) arguments against the expediency of providing for its exercise by the corporation created by this charter are improperly addressed to us.

It is also said that the appointment of the commissioners by a judge of the supreme court is an exercise of original jurisdiction not warranted by the constitution, *art.* 6, *sec.* 2, thereof being that the supreme court shall have original jurisdiction in such remedial cases as may be prescribed by law, and that this is not a " remedial" case. But we should rather be of opinion that this special proceeding was as much a " remedial " case as any other special proceeding. *Bost. W. P. Co. vs. Bost. and Wor. R. Co.*, 23 *Pick.* 360, *p.* 395.

The court of appeals of New York have considered that every original application to a court of justice for a judgment or an order is a remedy, not only under their code, but on the established definition of that word. (*In the matter of Cooper, supra.*) Bouvier defines remedy to be "the means employed to enforce a right, or redress an injury." Is not this proceeding the means which the appellant's charter authorizes it to employ to enforce the right to take land for its purposes? Is not the application in question one step in the proceeding? If so, the appellant was pursuing a remedy in making it.

The next objection, that the state should itself determine, in the first instance, what lands are necessary to be taken, is disposed of by the reflection, as above, that the mode of exercising the eminent domain rested in the discretion of legislation. The impossibility of a determination in advance of the legislature as to what particular land might be needed under this charter, is sufficient, of itself, to justify the wisdom of its not undertaking to do so.

The respondent insists that his is the only correct doctrine

in view of our general railroad law, which will otherwise, he says, enable any number of railroad companies to organize in any county, and condemn land at pleasure.

Our views upon this subject with special reference to our general law aforesaid, are so fully stated in *Wier vs. St. P. S. & T. F. R. R. Co. et al.*, (*ante, p.* 154,) that we need only refer to the opinion in that case as saying all that is necessary as to the manner in which our general laws and special charters provide for determining the question as to what lands are necessary to be taken for the purposes of any road.

As to the objection that the provisions of the charter authorizing the condemnatory proceedings are void, because they provide that the company may possess and use the lands of private persons before making or securing payment therefor, it is true that the provision which authorizes such possession and use is void. *Gray vs. First Div. St. P. & P. R. R.*, 13 *Minn.* 315; *Hursh vs. First Div. St. P. & P. R. R.*, 17 *Minn.* 439.

It is true, also, that where the company has entered upon and taken land for its purposes, and thereafter commissioners are appointed to assess the value of such land at the time it was so entered upon and taken, an award of such value would not be that just compensation without which private property cannot be taken for public purposes, and that, therefore, the tender of the amount thereof after the time of appeal expired could not affect the title of the land owner. *Hursh vs. First Div. St. P. & P. R. R., supra.*

But upon a motion to vacate the order appointing these commissioners, although so much thereof as purports to authorize them to make an appraisal of land which the appellant had theretofore entered upon, possessed and occupied, or used, at the time it was so entered upon and taken, might be nugatory, yet it does not follow that so much of the order as

Warren v. The First Division of the St. Paul & Pacific Railroad Co.

authorizes the commissioners to make a like appraisal of lands thereafter to be taken would be.

The General Statutes provide for commissioners to examine land proposed to be taken, and appraise the damages arising from the taking, (*ch.* 34, *sec.* 19,) and under this provision the assessment of damages by the commissioners is the first step in the process of taking; they are to be assessed as of that date. *Carli vs. Stillwater and St. P. R. R. Co.*, 16 *Minn.* 260.

Upon this return it is not possible to ascertain when, if ever, the company took respondent's land, or that the award is not of the value of the land at the date of the making thereof.

If it appeared that the appellant had taken possession of and used respondent's land before the award, and that its value was appraised as of the date of the commencement of such illegal possession, the question would arise whether an appeal from the award waived an objection to the order appointing commissioners, on the ground that it authorized an award of less than just compensation, or to the award on the ground that it did not amount to such compensation.   But no such question arises here.

Order appealed from reversed.