THE ST. LOUIS, EL RENO AND WESTERN RAILWAY COMPANY,

*a corporation,* v. JAMES E. OLIVER AND ANNIE OLIVER.

(Filed September 8, 1906.)

1. **DAMAGES—Eminent Domain—Evidence.** Where a railroad, in condemning a right of way, cuts in two a tract of land, the fact that the operating of trains over the line of road and across the particular land increases the danger of fire to buildings and crops, and increases the danger to stock, are not matters which constitute independent elements of damage for which a specific award may be made; but such facts when proven, together with any other inconveniences or damages occasioned by the building and operating of the road, may be considered by the jury in determining the value of that part of the land not taken.

2. **JUDGMENT—Interest—Allowed, When.** In a case tried by jury, where it is clearly apparent that the prevailing party is entitled to interest upon the amount found in the verdict, and it is unquestionablly clear that the jury allowed no interest, or where the court reserved the question of allowance of interest, until after verdict, and it is clearly ascertainable from the verdict or uncontroverted facts the date from which to which interest should be allowed, and the rate is fixed the court may make the computation, and add the interest so found to the sum found in the verdict and render judgment for the aggregate amount.

3. **SAME—Same Questions Reserved from Jury, When.** In condemnation proceedings where the land owner appeals from the award and the case is tried to a jury in the district court, it is not proper to permit the jury to be informed of the amount of the award made by the commissioners, and as the allowance of interest is dependent upon the question as to whether the amount of damages awarded by the jury is greater or less than the award of the commissioners, the court may, where the question is uncontroverted as to the date from which interest should be allowed, reserve the question of interest for determination by the court and direct the jury not to include interest in their verdict.

(Syllabus by the Court.)

*Error from the District Court of . Logan County; before*
*C. F. Irwin, Trial Judge.*

*Dale & Bierer,* for plaintiff in error.

*Cotteral & Hornor,* for defendants in error.

Opinion of the court by

BURFORD, C. J.: The St. Louis, El Reno & Western Railway Company commenced proceedings to condemn the right of way for its line of road over the lands of the defendants in error. After the award was made by the commissioners, a trial by jury was demanded, and a trial had in the district court, which resulted in a judgment against the railroad company for $4,573, and costs of suit. The company has appealed to this court and argue but two points in their brief.

The trial court gave the following instruction to the jury:

"In determining the depreciation in value of this land by the construction and operation of a railroad across said land, if any depreciation has been caused, you have no right to include in your estimate any damages from loss by probable fires. The law requires the railroad company to pay for all losses occasioned by fires set out by it, and such losses cannot be recovered until they actually occur; nor can damages be allowed for the probable loss for killing stock or frightening teams. But if the mere fact of operating trains across the farm, with its probable attendant danger of fires, killing of stock, frightening teams, noises, etc., depreciates the salable value of the land and decreases its actual, reasonable market value, then any such depreciation may be considered by

you in assessing the damages to the remaining portion of said land."

It is contended by the appellant that the jury had no right to consider in any way possible fires or injury to stock, etc., as bearing upon the amount of damages. Let us consider the real effect of the instruction. The first part of it tells the jury that they cannot consider damages from loss by probable fires, etc., and in this statement the court had reference to such loss as an independent element of damages; but in the latter part of the instruction the court states that the jury may take into consideration the probable dangers of fires, and the killing of stock, the frightening of teams, noises, etc., in determining the detriment caused to the remaining portion of the land; and as to whether or not the operating of the company's trains would be attended by any probable dangers or inconveniences, from these sources, the jury were left to determine. But, if attended by dangers and inconveniences, and their presence affected the value of the land, the court said they might be considered in determining the defendants' (land-owners') injury.

It is argued that these matters are too remote and are not contemplated by the law, and section 1041 of Wilson's Annotated Statutes is cited to support this position. That part of the section which is applicable is as follows:

"The commissioners shall be duly sworn to perform their duties impartially and justly; and they shall inspect said real property and consider the injury which such owner may sustain by reason of such railroad; and they shall assess the damages which said owner will sustain by such appropriation of his land; and they shall forthwith make report thereof in writing to the clerk of the said court, setting forth the quan-

tity, boundaries and value of the property taken, or amount of injury done to the property which they assess to the owner."

In the exercise of the right of eminent domain, due regard should be observed for the enjoyment of the property of the owner which is not taken, as well as full compensation paid to him for the property of which he has been deprived; and when the legislature directed the commissioners by the terms of the statute last referred to, to "inspect said real property and consider the injury which such owner may sustain by reason of such railroad" and to "assess the damages which said owner will sustain by *such appropriation* of his land," it was intended that he should not only receive pay for the land actually taken, but that if only a part of a tract were appropriated the injury, if any, to his remaining land, should be considered. The real measure of damages being the difference, if any, in the value of the land as a whole without the road over it and the value of that which remains untaken, burdened with the dangers and inconveniences incident to the operating of the road. And if the running of trains over the company's road increases the dangers of fire to grass and grain, etc., raised on the adjoining lands which formed a part of the original tract from which the right of way was taken and adds to the inconvenience of farming the remaining land, such matters ought to be considered by the jury as bearing upon the amount of damages sustained, not as independent items of damages, but as affecting the market value of the land untaken. If the owner were to offer the land for sale a prospective purchaser would consider these dangers and inconveniences. They contribute to the injury of the owner and are the direct result of the building and operating of the road. The statute allows such

owner for "the injury he may sustain by reason of such railroad, and for all damages sustained by such appropriation of his land."

Mr. Lewis, in his work on Eminent Domain, vol. 2, sec. 497, says:

"When a part of a tract is taken for railroad purposes, danger from fire to buildings, fences, timber or crops upon the remainder, in so far as it depreciates the value of the property, may be properly considered. It is immaterial that the railroad company is made absolutely liable for all losses by fire which originate from the operation of the road, whether they result from negligence or otherwise. Such liability would doubtless render the depreciation in value less than in cases where the company was liable only for fires resulting from negligence. It is to be borne in mind that compensation is not to be given for increased exposure to fire, nor for increased insurance rates, nor for probable losses by fire in the future for which no recovery can be had, but simply for depreciation in the value of the property by reason of the danger from fire."

The supreme court of Arkansas in the case of *L. R. Miss. & Texas Railway Company v. Allen,* 41 Ark. 431, laid down the following rule:

"The measure of damages for the right of way taken by a railroad company across a city or town lot, is the difference between the value of the whole land, without the road, at the time it was built, and the value of the portion remaining after it is built; and, in estimating this value, the jury should consider all present and prospective actual damages resulting to the owner from the prudent construction and operation of the road; the effect the road will have in decreasing the value of the land for gardening purposes; * * * * the dangers occasioned by the risk from fire, the care of family and stock,

38—Vol. 71

as well as inconveniences caused by embankments, excavations, ditches and obstructions to the free ingress and egress of the premises, and from the sounding of whistles, ringing of bells and rattling of trains."

To the same effect are: *St. Louis, Arkansas & Texas Railway Co. v. Cella,* 42 Ark. 528; *Railway v. Combs,* 51 Ark. 324.

Illinois has also upheld the rule stated in this opinion in a number of cases, among which is *The Chicago, Peoria & St. Louis Ry. Co. v. Michael Greiney,* 137 Ill. 628. The trial judge, as in this case, instructed the jury that dangers to fire, stock, etc., caused by building and operating the road, might be considered in determining the damage to the land not taken. Mr. Justice Scholfield said:

"Counsel argue that this is, in effect, allowing for supposed damages to stock and for supposed damages from fire, which this court has held (and properly) is not admissible. But this is not the language or the meaning of the instruction. The effect of the instruction is, that the jury are to take into consideration all facts which contribute to produce damage to the land not taken, as they appear from the evidence. That the facts recited are circumstances which may tend to deteriorate the value of a farm, and therefore contribute to produce damages to land not taken, we think can admit of no controversy."

The *Chicago, Peoria & St. Louis Ry. Co. v. Henry L. Blume,* 137 Ill. 448; *The Chicago, Peoria & St. Louis Ry. Co. v. E. Nix,* 137 Ill. 141; *The Chicago, Paducah & Memphis Railroad Co. v. William T. Atterbury,* 156 Ill. 281; *The Chicago, Peoria & St. Louis Ry. Co. v. James Aldrich,* 134 Ill. 9; *The Centralia and Chester Railroad Co. v. Maria J. Blake*

*et al.*, 125 Ill. 293; *The Chicago, Burlington & Northern Railroad Co. v. Alice Bowman, et al.*, 122 Ill. 595; *The Chicago & Iowa Railroad Co. v. Robert Hopkins et al.*, 90 Ill. 316. See footnote No. 17 on page 1114 of vol. 2 of Lewis on Eminent Domain; "Cyc" Vol. 15, page 752, footnote No. 31; *Nels Johnson v. Chicago, Burlington & Northern Railroad Co.*, 37 Minn. 519; *Curtis v. St. Paul S. & T. F. R. Co.*, 20 Minn. 19; *Orpheus Stillman v. Northern Pacific Fergus & Black Hills Railroad Co.*, 34 Minn. 420; *Johnson v. City of Boston*, 130 Mass. 452; *Chicago, Burlington & Quincy Railroad Co., v. Ezra B. Shafer*, 49 Neb. 25, 68 N. W. 342; *Freemont, Elkhorn & Missouri Valley Railroad Co. v. George Bates*, 40 Neb. 381, 58 N. W. 959; *Omaha Southern Railway Co. v. Levi G. Todd*, 39 Neb. 818, 58 N· W. 280; *St. Louis Fort Scott & Wichita Railroad Company v. Timothy M. Auliff*, 43 Kans. 185; *J T. Hamilton et al. v. Pittsburg, Bessemer and Lake Erie Railroad Co.*, 190 Pa. St. 51; *The Wilmington and Reading Railroad Company v. Stauffer*, 60 Pa. St. 374. The earlier Pennsylvania cases held the contrary rule. *Pingery v. The Cherokee and Dakota Railway Company*, 78 Iowa, 438; *Wooster v. The Sugar River Valley Railroad Co.*, 57 Wis. 311. The instruction given is in consonance with reason, and is upheld by the weight of authority.

The second contention of the appellant is that the court had no right in law to compute interest on the amount of the award, and include such interest in the judgment. It is clear from the record that the jury did not allow any interest, for the court, over the objections of the attorney for the railroad company, instructed them not to include interest in their verdict, as the court would determine the question of appellee's right to interest.

The appellant nowhere insists that interest should not be allowed, but that the jury should have computed the amount thereof and included it in the general verdict.

The contention is urged that inasmuch as we adopted the Kansas code of civil procedure, and the Kansas supreme court having announced a doctrine contrary to the ruling of the trial court in this cause, that the rule comes within the frequently announced doctrine of this court that where an adopted statute has received a settled construction by the highest courts of the state from which we borrowed the statute prior to our adoption of it, we will follow such construction. While we adhere to the above rule of construction of adopted statutes, we do not think that the question here under consideration comes within the rule. The question is not one of the construction of a statute, but one of practice, upon which the code prescribes no mandatory rule. It is true the code provides, sec. 4475 Wilson's Stat.: "Where by the verdict either party is entitled to recover money of the adverse party, the jury in their verdict must assess the amount of the recovery;" yet a substantial compliance with this provision is all that is required, and where the law fixes the rate of interest, and the court is able to determine that the jury has allowed no interest, and the time for which interest is to be allowed is apparent, we can see no impropriety in the court making the computation, and including the amount in the judgment.

It is true some of the Kansas cases seem to be antagonistic to this doctrine. The first case to which our attention has been called is *Educational Association, etc., v. Hitchcock,* 4 Kans. 36, in which the jury returned a verdict for

"$480.27, and interest from the 4th day of June, 1864." The trial court included the interest in the judgment. The supreme court modified the judgment and struck out the interest. The court said: "It was the duty of the court to instruct the jury as to the rate of interest, and then they might calculate it. Failing to do so and the jury failing to compute it, the court could not take such interest into consideration in rendering judgment." Yet in the case of the *City of Atchison v. Byrnes,* the verdict of the jury was for "$334.00 with interest from Dec. 24, 1872 at the rate of seven per cent. per annum." The court computed the interest, and included it in the judgment, and the supreme court affirmed the judgment. And in the case of *Wilson v. Means,* 25 Kans. 83, the supreme court of that state said:

"Exception is also taken to the judgment on the ground that it is for a much larger amount than authorized by the verdict. The point is well taken. The jury failed to compute the interest, or to specify any rate of interest in the verdict; therefore the court could not take the interest into consideration in rendering judgment. The case comes clearly within the rule announced in *Educational Association v. Hitchcock,* 4 Kans. 36. Where the interest is not stated in the verdict, the court cannot tell with certainty the rate intended by the jury, and in such cases it would be necessary in order to determine the interest to look back to the petition or some other pleading. Such a procedure is not allowable. If the interest is computed and included by the jury in the verdict, or if the rate of interest is specified, and the date from which and to which the damages are to draw interest, the amount assessed by the jury may be calculated with absolute certainty from the face of the verdict and the court may include the interest in the judgment."

In the above case is found a clear recognition of the right of the court to include interest in the judgment where the same is but a matter of computation, although the amount is not stated in the verdict.

Again, in the case of *Mills v. Mills*, 39 Kans. 455, it was held:

"In assessing the value or amount of recovery the jury should include in their verdict any interest found to be due; but where the rate of interest and the dates between which it is to be recovered are stated in the verdict, the court car determine the amount of the interest with absolute certainty, and may properly include the same in the judgment entered in the verdict."

Here also is a recognition of the authority of the court to render a judgment for a greater amount than that fixed in the verdict, where the computation can be made from data appearing upon the face of the verdict. We can perceive no substantial difference between the power exercised by the court in the Kansas case and the one at bar; the only difference is in the means employed to reach the result; one is as certain and definite as the other.

In *The Southern Kansas Raailway Company et al. v. Showalter*, 57 Kans. 681, the court said:

"It is error for the court to compute interest on the amount of a verdict for a period prior to the date of its rendition, and render judgment therefor when the verdict neither includes such interest nor affords definite data for its computation."

The last expression of the Kansas supreme court to which our attention has been directed upon a similar question, was in *Marsh v. Kendall et al.*, 65 Kans. 48, 68 Pac. 1070. In

this case the jury rendered a verdict for the balance due upon a promissory note, and omitted to include or make any mention of interest. The court computed and added to the amount found in the verdict over one hundred dollars of interest, and rendered judgment for same. In this case the plaintiff objected, and appealed from the judgment. The supreme court said:

"In this case the jury had found against the defendant as to the facts and times and amounts of payments made. The meritorious issues of the case had been thereby settled as fairly as though interest had not been mistakenly omitted from the calculation. There could not be any dispute as to the rate of interest, or the time it ran since the last payment was made. Hence had the motion for new trial been sustained, it would have been to correct a mere mathematical error which the court and parties themselves were entirely able to rectify. It would have been to retry a disputed question of fact, not for any error in determining such fact, but for an error as to another matter about which there was no dispute. In such cases as this the courts are authorized to make an addition to the verdict, or rather to render judgment for the additional amount."

No language could be more apt or applicable to the case under considerataion. If a new trial is granted it will be to correct a mere mathematical calculation, about which as appears from the record in this case there was and can be no dispute. The issuable fact was what sum the land owner was entitled to receive for the land taken for right of way and injuries to the remainder of the land upon the date of the award by the commissioners, and the court so informed the jury and they determined and fixed that sum. The land owner having as appeared from the record obtained a larger

verdict than the amount of the award, he was entitled to interest at the legal rate upon the amount of the verdict from the date of the award until the date of the judgment. The data from which to make the calculation or computation was all a matter of record and undisputed. The court out of commendable precaution refrained from informing the jury of the amount of the award, and instructed them that they should not consider the question of interest, and if it should appear after verdict that the land owner was entitled to interest the court would compute it and include it in the judgment, and this action of the court is abundantly sustained by authority.

In *Reed v. Chicago, M. & St. P. Ry. Co.,* 25 Fed. 886, the jury was instructed to return a verdict assessing the damages in a condemnation suit as of the date of the condemnation proceedings, and the question was presented as to whether the court could compute the interest and include such sum in the judgment. Mr. Justice Shiras, the presiding judge, said: "Until the verdict is rendered it cannot be known whether plaintiff may be entitled to interest. When this is determined by the amount of the verdict, the court can then make the proper order, and the same will form part of the adjudication settling damages;" and the court determined the amount of interest the plaintiff was entitled to, added this sum to the amount of the verdict as returned by the jury, and rendered judgment for the aggregate amount.

The case of *Alloway v. Nashville,* 88 Tenn. 510, was a condemnation proceeding. The jury allowed no interest; no instruction on that subject was given or requested, but after the verdict was returned and before judgment was entered,

Alloway moved the court to add interest. This the court refused to do and Alloway appealed, assigning as error the refusal of the court to include interest in the judgment. The supreme court said:

"Refusal to add interest was error. In the language of one of the counsel for appellants, 'if the party in whose favor there is a verdict is, as a matter of law, entitled to something additional the court may allow it.' Inasmuch as the error can be readily corrected here, that will be done instead of reversing and remanding. This court will render the judgment that should have been rendered below."

In Elliott on Railroads, vol. 3, page 1457, that eminent author says:

"Where the jury were instructed that interest from the time the property was taken constituted a part of the plaintiff's damages, it will be presumed that interest to the date of the verdict is included therein, and judgment should be rendered simply for the amount of the verdict, but it is proper to have assessment on appeal made as of the date of the original award, and the court should in such case add interest to the amount of the verdict in rendering judgment."

The supreme court of Minnesota in *Warren v. St. Paul & Pacific Railroad Co.* 21 Minn. 424, and in *Whitacre v. St. Paul and Sioux City R. R. Co.*, 24 Minn. 311. expressly approves the practice, and declares it to be the duty of the court in cases where the verdict of the jury assesses the damages as of a date of the condemnation proceedings and prior to the trial, to calculate the interest from the date at which the damages are assessed to the time of trial, and render judgment for the amount of the verdict with the interest added.

The foregoing authorities seem to support a rule founded in reason and justice, and one which can result in no injury to any one. Where it is clearly apparent from the verdict, or the verdict and instructions of the court, that the jury did not in the assessment of the amount of the recovery include interest, and it is further clearly apparent that the party recovering is entitled to interest in addition to the amount stated in the verdict, and the rate is fixed by law or made certain by the terms of the contact, and the date from which to which interest should be computed is clearly and unquestionably ascertainable from the face of the verdict or from uncontroverted facts of record, the court may lawfully compute or calculate the interest, and add such sum to the amount allowed by the jury, and render judgment for the aggregate sum.

In the case at bar the trial court instructed the jury that their inquiry should be confined to the damages sustained by the land owners on the 21st day of August, 1903, and the jury assessed the damages as of that date. The court also instructed the jury that they should not include any interest in their verdict but that the question of allowance or disallowance and amount of interest would be reserved for determination and action by the court. The verdict was returned on December 10, 1904, and fixed the amount of damages at $4,160 on the 21st day of August, 1903, the date of the condemnation proceedings. It was admitted that the railway company had been in possession since that date, and had constructed its railroad. The law fixes the rate of interest in such cases. The sum allowed by the jury was in excess of the amount awarded by the condemnation com-

missioners. This entitled the Olivers as a matter of law to interest at the rate of seven per cent. per annum, the amount found in the verdict, from the 21st day of August, 1904, to the date of the rendition of judgment. This was all clearly apparent and ascertainable from the uncontroverted facts in the record. It .was but a matter of mathematical computation to determine the amount of interest, and this the court could do as well as the jury, and we deem this the better practice in this class of cases. The allowance of interest is a contingency dependent upon whether the verdict of the jury is larger or smaller in amount than the award of the commissioners, and the jury should not be permitted to know what the award was.

We find no error in the record and the judgment is affirmed at the costs of the plaintiff in error.

Irwin, J., who presided in the court below, not sitting; Burwell, J., dissenting as to the allowance of interest by the court; all the other Justices concurring.